**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 14-cv-02063-CMA

THAO THI PHAM,

      Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security

      Defendant.

_____

**ORDER AFFIRMING ALJ'S DECISION DENYING SOCIAL SECURITY BENEFITS**
_____

This matter is before the Court on review of the Commissioner's decision to deny

Plaintiff Thao Thi Pham's ("Plaintiff's") application for social security disability benefits

and supplemental security income, under Titles II and XVI of the Social Security Act, 42

U.S.C. §§ 401-33.  Jurisdiction is proper under 42 U.S.C. § 405(g).

## I.  BACKGROUND

Plaintiff, who is now 42 years old, filed an application for disability benefits, as

well as an application for supplemental security income, in September of 2008.  She

alleged a disability onset date of February 22, 2008.  (AR at 80.)[1]  After her initial

application was denied, she requested a hearing, which was held before an

Administrative Law Judge ("ALJ") on December 9, 2010.  (*Id.* at 178.)  The ALJ issued

an unfavorable decision dated January 20, 2011.  (*Id.* at 192.)  After a request for

_____

[1]  Citations to the Social Security Administrative Record, which is found at Doc. # 13, will be to
"AR" followed by the relevant page number.

1

review of the hearing was submitted to the Appeals Council, the case was remanded on

April 13, 2012, to the same ALJ, for a new hearing.  In the interim, Plaintiff reapplied for

benefits and her second application was consolidated with her original claim on remand

for a new hearing.

The second hearing was held on September 6, 2012, and on September 28,

2012, the ALJ again issued an unfavorable decision, denying benefits.  (AR at 77-106.)

Plaintiff again requested review of the decision on November 9, 2012 (*id.* 75-76), but

her request was denied on May 20, 2014 (*id.* at 1-7.)  This appeal followed.

## A. PLAINTIFF'S EVIDENCE OF DISABILITY[2]

Plaintiff was born in Vietnam in 1973.  When she was a teenager, she sustained

a fracture of her left leg when a car hit her while she was crossing the street.  Although

she could not obtain treatment for her leg at the time of this injury, she ultimately did so

after moving to Denver in 1990.  (*Id.* at 501-02.)  Thereafter, Plaintiff graduated from

high school in 1996, after studying hair styling.  She worked in various manufacturing

jobs from 1993 to 2005, and was a hair stylist from 1995 to 2007, when she developed

swelling and some white lumps in her right hand.   (*Id.* at 646.)  She made a claim for,

and received, worker's compensation benefits for this condition, and was diagnosed

with a ganglion cyst of the tendon sheath.  In August of 2007, she underwent surgery to

remove this cyst.  (*Id.* at 711.)  At her first hearing before the ALJ in December of 2010,

Plaintiff testified that she had been fired from her job as a hairstylist in February of 2008,

after injuring her hand at work.  (*Id.* at 119.)

---

[2] Plaintiff alleged both physical disability and mental impairments, including depression and anxiety.  The ALJ determined that her mental impairments did not constitute a disability, and she did not challenge this decision in her appeal.  Accordingly, the Court's discussion is limited to the ALJ's physical disability findings.

After Plaintiff's hand surgery, she began receiving treatment from Samuel Chan, M.D., to whom she complained of diffuse pain in her upper right extremity.  (*Id.* at 679.) However, Dr. Chan was "objectively . . . unable to find the etiology [origin] to explain the patient's persistent complaints."  (*Id.*)  Dr. Chan further noted that her EMG was within "normal limits."  (*Id.*)

Over the next few years, in an attempt to find the source of her hand pain, Plaintiff was examined by a series of physicians.  In January of 2008, Thomas Mordick, M.D., a hand surgeon, examined Plaintiff's hand.  He noted that there were "no vasomotor changes to suggest reflex sympathetic dystrophy [RSDS]," [3] and that she had a "full range of motion of the fingers.  Strength of 4/5 flexors and extensors all digits right hand with breakaway."  (*Id.* at 507.)  He further noted that although she reported hearing a "clicking" noise when she moved her fingers, he was "unable to hear or feel anything while she indicates she is able to do so."  (*Id.* at 507.)  Ultimately, he opined that he had "no explanation for the severity of her symptoms" but that his "examination [of Phan was] suggestive of symptom magnification."  (*Id.*)

In February of 2008, Conrad Tirre, M.D., a plastic surgeon, also examined Plaintiff's hand.  (*Id.* at 511.)  He noted that Plaintiff had "full range of motion with flexion of the small joints of the hand," and stated that he "could not elicit any locking, clicking or impedance of excursion of the flexor tendon."  He also reviewed an MRI of her right hand and stated that he "did not see any significant lesions, instability patterns, [or] fractures. . . There were some minimal inflammatory changes around the long finger

---

[3] RSDS is also known as Type 1 Complex Regional Pain Syndrome ("CRPS"), an "uncommon" form of chronic pain that usually affects an arm or leg and "typically develops after an injury, surgery, stroke or heart attack, but the pain is out of proportion to the severity of the initial injury."  *See* http://www.mayoclinic.org/diseases-conditions/complex-regional-pain-syndrome/basics/definition/con-20022844 (last visited 2/16/2015).

MCP joint which most likely represent a previous surgical intervention." (*Id.*)   Like Dr. Chan and Dr. Mordick, Dr. Tirre was also unable to offer an explanation for Plaintiff's hand pain, but concluded that there was "[n]o real significant evidence of a reflex sympathetic or regional pain syndrome." (*Id.* at 511).

That same month, Sharon Walker, M.D., who was treating Plaintiff on behalf of her worker's compensation insurer, concluded that Plaintiff reached maximum medical improvement (MMI) without permanent impairment.  (*Id.* at 605.)  Specifically, Dr. Walker noted that there were "no objective findings" to support Plaintiff's continued complaints of hand pain and decreased sensation: "She had a repeat MRI and there are no objective findings and she has essentially not improved or has plateaued with each [treatment]."  (*Id.*)

In March of 2008, Plaintiff was examined by her hand surgeon, Craig Davis, M.D. He noted that she had no significant swelling or dystrophic changes in her hand, and that she was able to move her hand with a full range of motion.  (*Id.* at 702.)  He also stated, "[r]egarding the possibility of CRPS, she does not fit the typical picture of this in that she does not have significant swelling or dystrophic changes and her pain is relatively localized to the middle finger." (*Id.* at 702.)  He recommended further follow-up, however, and suggested that Plaintiff try a steroid injection in that finger.  (*Id.*)

In June of 2008, John Aschberger, M.D., performed an independent medical examination as part of Plaintiff's worker's compensation case.  Dr. Aschberger examined Plaintiff and also reviewed her medical records.  (*Id.* at 520-23).  He concluded that "the patient's presentation has subjective limitations only, without significant objective findings to indicate the presence of a permanent impairment.  I

agree with previous evaluations indicating that [Plaintiff's] pain complaints and functional limitations are excessive for the objective findings." (*Id.* at 522.)  He also stated that his "examination is not suggestive of CRPS or other sympathetically mediated pain syndrome," that Plaintiff had reached MMI, and that she had zero percent impairment.  (*Id.*)

Around this same time period, Plaintiff also began receiving treatment from the Lakewood Medical Center for hand pain.   (*Id.* at 572.)  In September of 2008, her treating physician, Dr. Hai Bui, concluded that Plaintiff had RSDS, but the only physical finding supporting this conclusion was a finding of "tenderness." (*Id.* at 567.)  In October of 2008, Dr. Bui opined that Plaintiff was disabled due to hand pain (with a side note indicating "possible reflex sympathetic dystrophy"), anxiety, and depression. (*Id.* at 533-34.)  In a letter, Dr. Bui stated that "Currently she complained of severe pain in the right hand, making her unable to work. . . . At this time, I believe she is not able to work due to her medical problems until further evaluate [sic] and treat [sic.]"  (*Id.* at 534.)

In December of 2008, James Crosby, D.O., and Kathryn Polovitz, M.D., both neurologists at the University of Colorado, examined Plaintiff at Dr. Bui's request. (*Id.* at 526).  During her appointment, Plaintiff complained of worsening pain. (*Id.*)  Upon examination, Dr. Crosby noted that Plaintiff's right hand had normal muscle bulk and tone, but that he had difficulty performing a strength examination test "as she had difficulty understanding the instructions." (*Id.* at 527.)  Nevertheless, the doctors did note that there was "much give way weakness[4] throughout the examination even

---

[4] "Malingering and other functional weakness is often characterized by give-way weakness, in which normal strength of effort suddenly gives way." *Aguinaga v. Astrue*, No. 4:12-CV-00445-REB, 2014 WL 28822, at *9 n.5 (D. Idaho Jan. 2, 2014) (quoting *Merck Manual of Diagnosis and Therapy* (19th ed. 2011)).

beyond the areas of her chief complaint." (*Id.* at 528.)  The doctors also concluded that it was "unclear" what the origin of her pain might be, although they did state that "the most likely diagnosis at this time **based on history alone** is regional complex pain syndrome type I," cautioning that "this is a very difficult diagnosis to make" and that it required "further study" and testing, including an x-rays and an electromyogram.   (*Id.*) (emphasis added.)

In April of 2009, Laura Moran, D.O., examined Plaintiff as part of her disability application.  (*Id.* at 588-91.)  At that time, Plaintiff complained of pain in her right hand and right middle finger, which radiated into her right arm and neck, as well as lower back pain with radiation into her left leg.  (*Id.* at 588.)  Plaintiff also reported that "she does nothing at all around the house all day and is unable to do any chores at all except for preparing simple meals." (*Id.*)  After examining Plaintiff's right hand and right middle finger, Dr. Moran stated that she "found no evidence of cysts, abnormal range of motion or swelling," and that her finger and hand joints had a normal range of motion, as well as full strength (a "5" rating on a "5" scale.)  (*Id.* at 589, 590.)  Dr. Moran also opined that Plaintiff had no physical limitations, including in "all daily self-care activities and repetitive motions with her hands."  (*Id.* at 591.)

That same month, Plaintiff received outpatient treatment from Jay Lee, M.D., at Denver Health Medical Center (Denver Health), for her right hand and lower back pain. (*Id.* at 787.)  In May of 2009, Dr. Lee referred Plaintiff to an orthopedist at Denver Health, who stated that "she does not appear to have any appreciable joint swelling or redness," and "[s]he does not have any hard findings of CRPS at this point in time for our examination, and this does not appear to be a likely diagnosis."  Nonetheless, this

doctor believed it was possible that Plaintiff had myofascial pain and, thus, referred her to receive ganglion block injections. (*Id.* at 782-83.)  When Plaintiff returned to Dr. Lee in October and November of 2009, with complaints of body aches, Dr. Lee believed that she might have fibromyalgia. (*Id.* at 803, 804.)

In January of 2010, Plaintiff was seen by Susan Ladley-O'Brien, M.D., a neurologist at Denver Health, who also thought that she might have fibromyalgia; she underwent a nerve conduction test of her right arm, which was only mildly abnormal, showing signs of possible median neuropathy. (*Id.* at 892-93.)  She was subsequently treated at Denver Health for possible fibromyalgia and temporomandibular joint disorder (TMJ), throughout the beginning half of 2010.  (*Id.* at 855, 866, 873, 881.)  Specifically, Plaintiff obtained treatment for TMJ syndrome from the dental clinic at Denver Health. (*Id.* at 833-41, 848-56, 860-81).  She was provided with a mandibular occlusive mouth guard split to wear at night (*id.*), but claims that her disorder continues to the present time, resulting in frequent headaches and neck stiffness (Doc. # 18 at 4.)

In June of 2010, she was examined by Dennis Boyle, M.D., a treating physician at the Rheumatology Clinic at Denver Health.  Dr. Boyle stated that Plaintiff had "widespread chronic pain.  Classic story with LBP [low back pain] being 80-90% of the symptoms," and that "this [was] much more than" fibromyalgia.  However, he did not describe any physical findings to support this diagnosis.  (AR at 847.)

Plaintiff continued to receive intermittent treatment at Denver Health throughout 2010, for a variety of issues – including fibromyalgia, lower back pain, TMJ, dental problems, and infections.  In December of 2010, Dr. Lee completed a residual functional capacity form for plaintiff, diagnosing her with chronic lower back pain and complex

regional pain syndrome, and stating that she could sit and stand 15 minutes at a time and two hours per day, and could rarely lift up to 10 pounds. (*Id.* at 929-31).

In October of 2011, Plaintiff returned to visit Dr. Lee, and he concluded that she had complex regional pain syndrome, but provided no physical findings to support this diagnosis. (*Id.* at 1183.) Over a year later, in March of 2012, Dr. Lee opined that Plaintiff was experiencing significant pain because she "reports having pain" and because she stated that "the pain is severe and constant." He also opined that her pain limited her ability to sit, stand walk, lift, and carry, but he did not determine how long (or under what circumstances) she might be able to conduct these tasks. (*Id.* at 1011, 1013-14.) Dr. Lee did, however, caution that it was "difficult to answer" whether her "description of the location, intensity, duration and frequency of the pain" was consistent with medical and clinical findings, as, "at times," he "fel[t] that her symptoms [were] not consistent with the medical/clinical findings." (*Id.* at 1012.)

At her second hearing before the ALJ in September of 2012, Plaintiff testified that she was disabled due to chronic pain in both arms and legs (particularly in her right wrist, which she described as "needle pain, burning, sharp pain, lots of pain"), as well as lower back pain, jaw pain, and neck pain. (*Id.* at 154-55, 159.) On "bad days," she testified that she could not function well and stayed in bed and took medications, while on "good days," she could "go out in the back yard and take a fresh air [sic] and come back in." (*Id.* at 155.) Additionally, Plaintiff stated that she must shift positions frequently and required help from family, friends and neighbors to purchase groceries. (*Id.* at 162, 163.) She also testified that she uses a cane (and has done so since 2010), wears a TMJ device every night (and has done so since 1999 or 2000), and that she

wears a splint on her right wrist 5-6 days a week and when she leaves her home.  (*Id.* at 154, 156, 160-61.)   She further testified she was limited to lifting 4-5 pounds, standing for 15-30 minutes, and that she could only ascend stairs by crawling.  (*Id.* at 162, 163, 166.)  Per the ALJ's questions, she stated that that she can pay bills and count change and needed no reminders to take her medicine or perform her own grooming.  (*Id.* at 166.)

The ALJ also received evidence from a 2009 fraud investigation conducted by the Office of the Inspector General (OIG) in connection with Plaintiff's disability benefits application.  The OIG's Report states that the investigation occurred because Plaintiff's allegations relating to pain in her hand were "in excess of the objective medical findings," and because "one treating source indicated [that] there may be symptom magnification."  (*Id.* at 493.)  The OIG report detailed how, on April 17, 2009, two Colorado State Patrol investigators witnessed Plaintiff entering and exiting multiple buildings with a purse over her right shoulder and a bag in her left hand; walking without a cane or other assistive device; and shopping at two different grocery stores by herself (including picking out items at one grocery store and placing them in her cart, and carrying grocery bags to her parked vehicle at both stores).  (*Id.* at 494-95.)  A few days later, the investigators conducted another surveillance session, in which they again witnessed Plaintiff carrying her purse over her right shoulder, a plastic bag in her left hand, and walking without the use of a cane or other assistive device.  The investigators later approached her parent's house and knocked on the door, and Plaintiff quickly walked to the front door to greet them.  (*Id.* at 496-97.)

Additionally, a neutral Vocational Expert testified that based on Plaintiff's residual functional capacity, she could return to her past relevant work as a hairdresser.  (*Id.* at 144.)

## B. THE ALJ'S DECISION

On September 28, 2012, the ALJ issued a second unfavorable decision, denying benefits.  (*Id.* at 99.)  The ALJ determined that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2012.  (*Id.* at 82.)   In applying the five-step sequential evaluation process outlined in 20 C.F.R. §§ 404.1520 and 416.920 to determine whether Plaintiff was disabled, the ALJ determined that:

1.     Plaintiff had not engaged in substantial gainful activity since her alleged onset date of February 22, 2008 [Step 1];

2.     Plaintiff had the following severe impairments: "disorder of the right hand, fingers, and wrist; temporomandibular joint disorder (TMJ); left leg disorder; fibromyalgia; chronic pain syndrome; pain or somatoform disorder; depressive disorder; and adjustment disorder" [Step 2];

3.     Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 [Step 3];

4.     Plaintiff had the RFC "to perform a full range of work at all exertional levels but with the following non-exertion limitations.  The claimant is able to frequently push, pull or otherwise operate hand controls with the right upper extremity.  She can frequently push, pull or otherwise operate foot controls with the left lower extremity. She is able to frequently handle and finger bilaterally.  The claimant should avoid climbing

ladders/ropes/scaffolds.  The claimant cannot perform any work involving safety operations, or have direct responsibility for the safety of others. The Claimant is able to communicate in English.  She cannot perform any work above SVP 6" [Step 4]; and

5.      Plaintiff was capable of performing past relevant work as a hairdresser. [Step 5].  (*Id.* at 82, 84.)

Plaintiff requested that the Appeals Council review this portion of the ALJ's decision, which it declined to do.  (*Id.* at 1-3.)  On July 24, 2014, Plaintiff filed her appeal to this Court of the Commissioner's final decision.  (Doc. # 1.)  Plaintiff filed her opening brief on December 10, 2014, and the Commissioner responded on January 9, 2015. (Doc. ## 18, 19.)

## II.  <u>STANDARD OF REVIEW</u>

The Court reviews the ALJ's decision to determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied.  *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  It requires more than a scintilla, but less than a preponderance.  *Id.* (quoting *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)). Evidence is not substantial if it is overwhelmed by other evidence in the record.  *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005).  In so reviewing, the Court may neither reweigh the evidence nor substitute its judgment for that of the agency.  *Salazar v. Barnhart,* 468 F.3d 615, 621 (10th Cir. 2006).

## III.  ANALYSIS

Plaintiff raises three arguments in support of her contention that the ALJ's decision should be reversed.  First, she argues that the ALJ did not apply the correct legal standards in determining the credibility of her statements and that his determination was not supported by substantial evidence.  Second, she contends that the ALJ improperly weighed the opinions and findings of Plaintiff's treating physicians and that his decisions to assign these opinions and findings less than controlling weight were not supported by substantial evidence.  Third, she argues that the ALJ did not apply the correct legal standards in determining Plaintiff's residual functional capacity (RFC), and that his determination of her RFC was not supported by substantial evidence.  The Court will address each contention in turn.

### A.  WHETHER THE ALJ APPLIED THE CORRECT LEGAL STANDARDS IN DETERMINING PLAINTIFF'S CREDIBILITY AND WHETHER HIS CREDIBILITY DETERMINATION WAS SUPPORTED BY SUBSTANTIAL EVIDENCE

As the Commissioner noted, the ALJ devoted a significant part of his decision to an evaluation of Plaintiff's credibility.  *See* (AR at 86-88, 94-95.)  Plaintiff argues, however, that the ALJ failed to give sufficiently specific reasons for disbelieving the Plaintiff and also contends that he failed to apply **all** of the factors outlined in 20 C.F.R. §§ 404.1529(c) and 416.929(c)[5] in making his credibility assessment, citing *Kepler v.*

---

[5] 20 C.F.R. § 404.1529(c) provides that, in "[e]valuating the intensity and persistence of your symptoms, such as pain, and determining the extent to which your symptoms limit your capacity for work," the ALJ considers "factors relevant to your symptoms. . . which . . . include:  (i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a

*Chater*, 68 F.3d 387, 391 (10th Cir. 1995).  However, when it comes to credibility

determinations, no "formalistic factor-by-factor recitation of the evidence" is required.

*Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).  Although an ALJ must give

"specific reasons why he or she rejects a claimant's subjective complaint of pain," *White*

*v. Barnhart*, 287 F.3d 903, 909 (10th Cir. 2001), "[s]o long as the ALJ sets forth the

specific evidence he relies on in evaluating the claimant's credibility, the dictates of

*Kepler* are satisfied."   *Qualls,* 206 F.3d at 1372; *see also White*, 287 F.3d at 910

(explaining that an ALJ's credibility findings "warrant particular deference" because

ALJs possess an institutional advantage as compared to reviewing courts: "Not only

does an ALJ see far more social security cases than do appellate judges, he or she is

uniquely able to observe the demeanor and gauge the physical abilities of the claimant

in a direct and unmediated fashion"); *Peeper v. Astrue*, 418 F. App'x 760, 767 (10th Cir.

2011) (internal quotation marks omitted) ("in reviewing an ALJ's credibility

determination, an appellate court 'give[s] the opinion a commonsensical reading rather

than nitpicking at it'").

Plaintiff essentially contends that the ALJ improperly discounted her complaints

of pain because of a lack of objective evidence.  Therefore, Plaintiff argues, the ALJ

applied an incorrect legal standard.  However, "[a] claimant's subjective allegation of

pain is not sufficient in itself to establish disability."  *Thompson v. Sullivan,* 987 F.2d

1482, 1488 (10th Cir. 1993).  Instead, "[**b]efore the ALJ need even consider any**

**subjective evidence of pain**, the claimant must first prove by **objective medical**

**evidence** the existence of a pain-producing impairment that could reasonably be

board, etc.); and (vii) Other factors concerning your functional limitations and restrictions due to
pain or other symptoms."

expected to produce the alleged disabling pain." *Id.* (citations omitted) (emphasis added).  As the Tenth Circuit has explained:

> [The court] must consider (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling.

*Id.* (citing *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987)).

In the instant case, the ALJ carefully analyzed the record as a whole and set forth the specific reasons supporting his negative credibility assessment, and these factors are well-supported by substantial evidence in the record.[6]  Chief among these reasons, he made clear, was the fact that Plaintiff's own testimony about her physical limitations and symptoms was inconsistent with the record.  In particular, the ALJ pointed to both the fact that Plaintiff's testimony was contradicted by the examination findings of multiple physicians and the observations of the OIG agents who had investigated her for fraud.  *See* 20 C.F.R. § 404.1529(c)(4); SSR 96-7P, 1996 WL 374186, at *5 (one strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record).  Although Plaintiff testified that she was limited to carrying one to five pounds and was unable to grocery shop by herself, OIG investigators saw her independently shopping at two different grocery stores and carrying grocery bags with both of her hands.  (AR at 87.)  Similarly, although Plaintiff testified she could not use her right arm and always

---

[6] The ALJ also specifically noted that he considered the factors outlined in 20 C.F.R. 404.1929 and SSR 96-7p and "utilized those credibility factors that were relevant to this claim," as well as "considered the appearance and demeanor of each witness who gave evidence in the form of testimony during the hearing." (AR at 84, 85.)  It is the Tenth Circuit's "general practice . . . to take a lower tribunal at its word when it declares that it has considered a matter." *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005).

used a splint while outside of the home, the ALJ noted that none of the medical examiners reported that she wore a splint (on any occasion), and that she was seen on two separate occasions carrying things with her right arm to open car doors and carrying her purse on her right shoulder.  (AR at 88.)  She was also seen carrying bags of groceries to her car.  (*Id.*)  The ALJ further noted that the objective clinical and medical findings were not consistent with her reported pain, and that the those reports that supported her claims of debilitating symptoms were based on Plaintiff's own subjective reporting of pain.  (*Id.* at 89-90.)

Although Plaintiff argues that the ALJ impermissibly used evidence of Plaintiff's minimal daily activities as substantial evidence that a claimant does not suffer disabling pain in contravention of the Tenth Circuit's holding in *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993), the ALJ's discussion of Plaintiff's daily activities was in the context of a determination of her credibility, not a determination of her pain. Specifically, the ALJ stated that "The claimant's activities of daily living are not as limited as one would expect given her allegations of debilitating symptoms."  (AR at 86.) Moreover, the ALJ specifically noted that she did not follow the advice of treating physicians, including recommendations for biofeedback, acupuncture, and pain injections.  (*Id.* at 90.)

Plaintiff also argues that the ALJ's discussion of "secondary gain" – that is, the emphasis the ALJ placed on Plaintiff's pecuniary interest in the outcome of her hearing – rendered his entire credibility assessment illegitimate.  (Doc. # 18 at 13.)  In particular, Plaintiff's Reply brief notes that the ALJ's first decision, which Plaintiff objected to and which was ultimately remanded by the Appeals Council, relied heavily on his concern

about Plaintiff's pecuniary gain, as it explicitly stated that "It is clear in this case, that the pecuniary interest factor is present. . . . I conclude that the claimant's evidence is inevitably colored by the claimant's pecuniary interest in the outcome of this disability claim." (AR at 184.)  However, the second ALJ decision did not place undue emphasis on Plaintiff's possible pecuniary gain and correctly evaluated her credibility based on her own statements, the OIG investigation, the medical evidence, and the record as a whole.  Accordingly, the ALJ "clearly and affirmatively linked his adverse determination of [Plaintiff's] credibility to substantial record evidence . . . and [this Court's] limited scope of review precludes [it] from reweighing the evidence or substituting [its] judgment for that of the agency."  *Wall*, 561 F.3d at 1070.

## B.  WHETHER THE ALJ PROPERLY WEIGHED THE OPINIONS AND FINDINGS OF PLAINTIFF'S TREATING PHYSICIAN

Plaintiff argues that the ALJ "essentially gave no significant weight" to the opinions of Dr. Jay Lee, despite the fact that Dr. Lee had treated Plaintiff for more than two years on a regular basis and had access to her complete medical records. Additionally, Plaintiff argues that the ALJ failed to apply the guidelines of SSR 96-2p, which provide that "treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. §§ 404.1527 and 416.927."

The standards an ALJ must follow when analyzing a treating doctor's opinion are well-settled.  The ALJ first considers "whether the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with the other substantial evidence in the record."  *Pisciotta v. Astrue*, 500 F.3d 1074, 1077 (10th Cir. 2007).  If so, the ALJ must give the opinion controlling weight.  *Id.*  But if the ALJ

decides the treating physician's opinion is not entitled to controlling weight, "the ALJ

must then consider whether the opinion should be rejected altogether or assigned some

lesser weight." *Id.* Relevant factors the ALJ may consider are set forth in 20 C.F.R. §§

404.1527(d) and 416.927(d). These factors include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003) (quotation omitted). The

failure to discuss all six factors is not fatal to an ALJ's decision. *See Oldham v. Astrue*,

509 F.3d 1254, 1258 (10th Cir. 2007) (declining to require ALJ to apply and make

specific findings concerning all six factors).

The Court first considers whether the ALJ properly analyzed Dr. Lee's opinion in

determining if it was entitled to controlling weight. The ALJ's decision recognized that

Dr. Lee was a treating source and thoroughly discussed his opinion, but ultimately

provided sound reasons to decide that it was not entitled to controlling weight.

Specifically, the ALJ

stated that the type of examination performed by Dr. Lee was problematic: "[i]t appears

from the medical records that Dr. Lee accepted at face value the statements made and

symptoms reported to the claimant. For example, there is nothing in the medical

treatment records to suggest that Dr. Lee conducted any sort of validity testing." (*Id.* at

94.) The ALJ also noted that "It appears Dr. Lee's opinions are simply based upon the

claimant's subjective reports of constant pain rather than his own independent clinical

findings." (*Id.* at 95.)  Because Dr. Lee's conclusions as to Plaintiff's functional

limitations and/or ability to work hinged on the accuracy and credibility of Plaintiff's self-

reporting and because the ALJ found that Plaintiff's allegations were not credible, the

ALJ properly decided that Dr. Lee's opinions were not entitled to controlling weight.   (*Id.*

at 94-95.)  An ALJ can properly reject a physician's disability opinion that is premised on

the claimant's own subjective complaint of disabling symptoms which the ALJ properly

discounted.  *Tonapetyan v. Halter,* 242 F.3d 1144, 1149 (9th Cir. 2001).  Under such

circumstances, the medical source's opinion is no more credible than the statements

upon which it was based.  *Id.*

The ALJ also noted that Dr. Lee's opinions were not entitled to controlling weight

because they were contradicted by diagnostic medical evidence elsewhere in the

record.  (AR at 94.)  The ALJ cited, for example,

1. Dr. Tierre's diagnosis, in February of 2008.  Dr. Tierre, a plastic surgeon,

   found "no real significant evidence of a reflex sympathetic dystrophy or

   regional pain syndrome." (*Id.* at 89.)

2. The diagnosis of Dr. Davis, her treating hand surgeon, who found no reason

   to suspect that she has developed CRPS.  (*Id.* at 89-90.)

3. Dr. Aschberger's independent medical examination, which occurred in June

   2008, and included a review of her medical records.  (*Id.* at 92-93.)  Dr.

   Aschberger assigned Plaintiff 0% impairment, and agreed with prior

   evaluations indicating that her complaints of pain and functional limitations in

   her hand were excessive for the objective findings, and that there was no

   evidence from her physical exam or the median nerve electrodiagnostic

values to suggest CRPS or another sympathetically mediated pain syndrome. (*Id.*)

4. Dr. Moran's consultative physical examination in April 2009, which, the ALJ noted, utilized medically acceptable clinical and laboratory techniques, and found that Plaintiffs' right hand was normal, and that she had no limits in engaging in repetitive motions with her hands.  (*Id.* at 93.)

5. That Dr. Crosby's and Dr. Polovitz' s diagnosis of CRPS was incomplete insofar as the diagnosis required further studies and findings, including abnormal x-rays.  (*Id.* at 89-90).

6. The fact that when x-rays were done in January 2009, they were normal, as was an EMG study performed in February of 2009).[7]  (*Id.*).

The ALJ's reliance on specific, physical examination findings, rather than Plaintiff's own subjective statements – particularly in the face of his negative credibility findings – was proper.  *See White*, 287 F.3d at 907 (holding that the ALJ set forth specific and legitimate reasons for discounting a treating physician's opinion when the ALJ "noted that the consulting physician performed more specific tests measuring [Plaintiff's] range of motion in her legs, back, and arms," and because her treating physician's assessment "was based on [Plaintiff's] subjective assertions rather than objective medical evidence.").

Although the ALJ did not specifically state the weight he conferred to Dr. Lee's opinion (i.e., whether the opinion should be rejected altogether or assigned some lesser

---

[7] Additionally, Dr. Crosby's and Dr. Polovitz's diagnosis of Plaintiff with CRPS was "based on history alone." (AR at 528.)  Not only is this subjective history inadequate to support a finding of impairment, 42 U.S.C. § 423(i), because it was based in subjective history, this diagnosis was permissibly discredited, given the ALJ's negative findings regarding Plaintiff's credibility.

weight), he did implicitly assign Dr. Lee's opinion lesser weight than those of the other examining physicians he cited.  Accordingly, his failure to explicitly determine its weight is not cause for remand.  *See Mays v. Colvin*, 739 F.3d 569, 575 (10th Cir. 2014) (declining to remand when the ALJ did not expressly state the weight he was giving to treating physician's opinion, because "the ALJ implicitly declined to give the opinion controlling weight," and the Court could "tell from the decision that the ALJ declined to give controlling weight to [the] opinion.")

**C. WHETHER THE ALJ APPLIED THE CORRECT LEGAL STANDARDS IN DETERMINING PLAINTIFF'S RESIDUAL FUNCTIONAL CAPACITY ("RFC") AND WHETHER HIS RFC DETERMINATION WAS SUPPORTED BY SUBSTANTIAL EVIDENCE**

Plaintiff argues that the ALJ's determination of her RFC is not supported by substantial evidence, because he (1) "summarily" rejected the opinions of Plaintiff's treating physicians and (2) gave undue weight to the opinions of her worker's compensation treatment providers and the consultative exam report from Dr. Moran. She also contends that the RFC determination "flies in the face of the objective findings and reports from her treating physicians."  (Doc. # 18 at 14-15.)

Plaintiff's argument appears to misunderstand the relationship between the role of the ALJ and the role of medical sources in the determination of a particular claimant's RFC.  The ALJ is not obligated to base his RFC findings on any particular medical source's opinion, including the treating physician.  Indeed, the ALJ is not required to adopt or rely on **any** medical source opinion in making her residual functional capacity assessment because the determination of residual functional capacity is not a medical opinion.  *See Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004).  Instead, RFC is assessed "based on all of the relevant medical and other evidence" – i.e., the entire

record. *Id.* ("[T]he ALJ, not a physician, is charged with determining a claimant's RFC from the medical record") (following 20 C.F.R. § 416.927(e)(2) and SSR 96–59, 1996 WL 374183, at *5); *see also* 20 C.F.R. §§ 404.1545(a)(3), 404.1546(c) and 416.946(c). Although the ALJ's RFC determination must be grounded in some medical evidence, ultimately the determination is an administrative determination reserved to the Commissioner.  20 C.F.R. § 404.1546; *Rutledge v. Apfel*, 230 F.3d 1172, 1175 (10th Cir. 2000).

Concomitantly, although the ALJ cannot ignore medical opinions relating to a claimant's functional capacity, *Chapo v. Astrue*, 682 F.3d 1285 (10th Cir. 2012), he is not obligated to include in his residual functional capacity assessment every limitation possibly suggested by a medical source.  *See Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (noting that "an ALJ is not required to discuss every piece of evidence," and an ALJ's opinion must only discuss the uncontroverted evidence he or she chooses not to rely upon and any significantly probative evidence he or she rejects); *Chapo*, 682 F.3d at 1288 (noting that "there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question.")    Moreover, when the medical evidence does not contradict the ALJ's conclusion, "the need for express analysis is weakened."  *Howard*, 379 F.3d at 947.

As discussed above, the ALJ did not "summarily" reject the findings of Dr. Lee, but had sound reasons for failing to assign his opinions controlling weight.  The ALJ specifically examined why he credited Dr. Moran's opinion over Dr. Lee's, and his findings clearly demonstrate that he carefully considered the Plaintiff's purported

functional limitations in rendering his RFC.  Specifically, he included reasonable manipulative (limiting the use of frequent hand and foot controls) and environmental (avoiding climbing ladders, ropes, scaffolds) limitations in his RFC.  (AR at 84.)  This tempering of Dr. Moran's opinion that Plaintiff had no functional limitations is permissible because it was in Plaintiff's favor and grounded in substantial evidence.   *Chapo*, 682 F.3d at 1288 ("if a medical opinion adverse to the claimant has properly been given substantial weight, the ALJ does not commit reversible error by electing to temper its extremes for the claimant's benefit.")

In her Reply brief, Plaintiff argues that Dr. Moran's worker's compensation examination was limited to considering Plaintiff's hand injury, not her other claimed impairments, including TMJ, fibromyalgia, chronic pain syndrome, or depressive and adjustment disorder.  (Doc. # 20 at 5.)  As for the depressive or adjustment disorders, Plaintiff did not appeal the ALJ's mental RFC determination, so these limitations are not relevant for purposes of this appeal.  As for Plaintiff's other purported limitations, the ALJ specifically discussed why he did not credit the findings of physicians with regard to fibromyalgia and chronic pain syndrome – i.e., a lack of physical, objective medical evidence, which is required for an impairment to be shown under the Social Security Act, and which he explicitly weighed against the credibility of Plaintiff's subjective statements.  (AR at 90-93.)  *See* 20 C.F.R. § 404.1527(c)(3) (emphasis added) ("The more a medical source presents relevant evidence to support an opinion, **particularly medical signs and laboratory findings**, the more weight we will give that opinion."); 42 U.S.C § 423(5)(A) (emphasis added) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence

thereof as the Commissioner . . . may require.  An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; **there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques**, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities.")  As for Plaintiff's TMJ, the ALJ found that Plaintiff was not credible as to the limitation her TMJ caused, because her testimony was inconsistent regarding whether she wore a TMJ splint device at night, whether the device helped her, and whether her TMJ caused her pain or not.  (AR at 91.)

In sum, the ALJ's residual functional capacity findings have substantial support in the record, and he applied the correct legal standard in determining the RFC.  As such, the Court finds no grounds for remand on this issue.

## IV.  <u>CONCLUSION</u>

Accordingly, it is ORDERED that the ALJ's denial of social security disability benefits in this case is AFFIRMED.   Each party shall bear its own costs and attorney fees.

DATED:  February 25, 2015

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge